UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

UNITED STATES OF AMERICA,       )
                                )
        Plaintiff/Respondent,   )        No. 7:09-CR-46-GFVT
                                )        No. 7:13-CV-7307-GFVT-REW
v.                              )
                                )        RECOMMENDED DISPOSITION
JAMES MARSILLETT, II,           )
                                )
        Defendant/Movant.       )

*** *** *** ***

Movant, James Marsillett, II, is a federal inmate. DE #611 (Motion), at 1. On

September 9, 2013,[1] Marsillett filed a *pro se*[2] motion, accompanied by a memorandum,

under 28 U.S.C. § 2255. *See generally id.* The United States responded in opposition on

January 7, 2014. DE #621 (Response). Marsillett then replied on January 15, 2014.[3] DE

#624 (Reply). Also on January 15, Marsillett submitted a *pro se* motion to appoint

counsel to investigate the ineffective assistance of counsel allegations contained in his §

2255 motion. DE #625 (Motion to Appoint Counsel).

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (per curiam). Here, Marsillett affirmed under penalty of perjury that he executed and mailed the motion, per prison mail, on September 9, 2013. DE #611 (Motion) at 12.

[2] *Pro se* petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, though vague and conclusory, are entitled to a liberal construction" including "active interpretation" toward encompassing "any allegation stating federal relief" (citations and internal quotation marks omitted)).

[3] This date also reflects application of the prison mailbox rule. *See Richard*, 290 F.3d at 812-13 (per curiam).

Per normal practice, the District assigned the matter to the undersigned for a recommended disposition. The Court **RECOMMENDS** that the District Judge fully **DENY** § 2255 relief and issue **NO** Certificate of Appealability. The Court further **DENIES** the Motion to Appoint Counsel (DE #625).

## I. BACKGROUND INFORMATION

On October 22, 2009, the United States indicted Marsillett on five counts related to acquisition and distribution of oxycodone and methadone, which are Schedule II controlled substances. DE #1 (Indictment). Subsequently, on November 10, 2010, Marsillett entered a guilty plea to one count of Engaging in a Continuing Criminal Enterprise in violation of 21 U.S.C. § 848. DE #439 (Minute Entry for Rearraignment before Judge Atkins); *see also* DE #1 (Indictment), at 1-3. Judge Van Tatenhove sentenced Marsillett on June 14, 2012. DE #534 (Minute Entry for Sentencing). Defendant received a 240-month prison term followed by five years of supervised release. DE #538 (Judgment). Marsillett filed a timely notice of appeal of his sentence, DE #532 (Notice of Appeal); the Sixth Circuit affirmed. DE #588 (Sixth Circuit Order).

On September 9, 2013, Marsillett timely submitted his § 2255 motion to vacate. DE #611 (Motion). The Government responded, DE #621 (Response), and Marsillett subsequently replied, DE #624 (Reply). The motion stands ripe and ready for review. The Court wholly rejects Movant's claims premised on alleged plea agreement breach and ineffective assistance of counsel.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if his or her sentence violates the Constitution or federal law, the federal court lacked

jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))). A defendant alleging a constitutional violation must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1721-22 (1993)). When alleging a non-constitutional error, a defendant must prove the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471 (1968)); *see also Watson*, 165 F.3d at 488. In making a § 2255 motion, a movant generally bears the burden of proving his or her factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

## III.    ANALYSIS

In his § 2255 motion, Marsillett requests relief based on three grounds: (1) the Government's alleged breach of the parties' plea agreement, (2) ineffective assistance of

trial counsel relative to the alleged breach, and (3) his guilty plea not being knowingly and intelligently made due to ineffective assistance of trial counsel (featuring alleged inadequate investigation, failure to secure exculpatory evidence, and misadvice). DE #611 (Motion). After examining two initial matters, the Court concludes that because Marsillett has failed to make the required showings by a preponderance of the evidence on any of the three grounds, he is not entitled to relief under 28 U.S.C. § 2255.

## A. Procedural Default[4]

As the first initial matter, the Court considers procedural default. As a general rule, a § 2255 motion cannot substitute for direct appeal. *Capaldi v. Pontesso*, 135 F.3d 1122, 1124 (6th Cir. 1998) ("An application under § 2255 . . . should not be considered a substitute for direct appeal."); *Sunal v. Large*, 67 S. Ct. 1588, 1590 (1947) ("[T]he general rule is that the writ of habeas corpus will not be allowed to do service for an appeal."). To assert a claim not raised on direct review, a defendant ordinarily must show

---

[4] The Government made no mention of procedural default, thus implicitly waiving the defense. *Cone v. Bell*, 129 S. Ct. 1769, 1791 n.6 (2009) (noting that "procedural default may be waived if it is not raised as a defense") (citation omitted); *Flood v. Phillips*, 90 F. App'x 108, 114 (6th Cir. 2004) (discussing waiver of procedural default as a defense and declining to raise the issue *sua sponte*). However, courts may consider the issue *sua sponte*. *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) ("We also note that the Government failed to raise Elzy's default, either before the district court or before us on appeal. But we are not required to review the merits of defaulted claims simply because the Government has failed to raise the issue. While procedural default is not a jurisdictional bar to review of such a claim . . . and the Government's failure to raise the default may operate as a forfeiture of its right to defend on that ground, . . . we nonetheless may raise [issues of default] *sua sponte*." (citations omitted)); *but see Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (cautioning, "Like many of our sister circuits, we agree that appellate courts should not embrace *sua sponte* raising of procedural default issues as a matter of course." (citation and quotation marks omitted)). Here, the Court raises default but, as Marsillett is not on notice of the issue, does not treat the doctrine as dispositive.

cause for the default and prejudice.[5] *See Bousley v. United States*, 118 S. Ct. 1604, 1611 (1998) (citing *Wainwright v. Sykes*, 97 S. Ct. 2497, 2506-07 (1977)); *United States v. Frady*, 102 S. Ct. 1584, 1594 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). Additionally, "[i]f claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available" subject to an analysis under *Strickland v. Washington*, 104 S. Ct. 2052 (1984). *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

In his motion, Marsillett concedes that he did not raise any of his three grounds on direct appeal. DE #611 (Motion), at 4-7. Much of arguments 2 and 3 center on alleged ineffective assistance of counsel, which would likely not be capable of presentation on direct appeal. *See Massaro v. United States*, 123 S. Ct. 1690, 1693 (2003). Thus, while the plea agreement breach issue may be defaulted, the subsidiary or independent *Strickland* claims would not.[6] Further, because the Government has not relied on procedural default as a defense, and in the interest of justice, the Court will not treat the procedural default as dispositive.

---

[5] Proof of actual innocence also potentially permits review of a claim not raised on direct appeal. *Bousley*, 118 S. Ct. at 1611.

[6] The Court does have conceptual concerns about pursuit of the plea-based argument in this context. Section 2255 primarily addresses matters of constitutional import. A plea breach may yield a contract remedy but does not necessarily implicate plea validity, as the Supreme Court noted in *Puckett v. United States,* 129 S. Ct. 1423, 1430 (2009) ("In any case, it is entirely clear that a breach does not cause the guilty plea, when entered, to have been unknowing or involuntary."); *see also King v. Berghuis*, 744 F.3d 961, 965 (6th Cir. 2014) (discussing plea validity versus plea agreement issues and noting, "There can be no dispute that *Santobello* and *Boykin* impose different requirements and that a claim brought under one is not also brought under the other."). Given the *Strickland* argument Marsillett also attempts, the Court will not resolve the concerns.

B. Waiver of Collateral Attack Right

The second initial matter is the plea agreement waiver of the right to collaterally attack the guilty plea and conviction. Movant's plea agreement states, "The Defendant waives the right to appeal and the right to attack collaterally the guilty plea [and] conviction, including any order of restitution." DE #536 (Plea Agreement) at 5, ¶ 7. In the Sixth Circuit, an "informed and voluntary" collateral attack waiver is enforceable. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. Cir. 1999); *see also United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001) (explaining that a defendant in a criminal case may waive any right via a plea agreement, including a constitutional right). The record in this case, including a finding by the Sixth Circuit upholding the plea and sentence, supports waiver enforcement. *See* DE #588 (Sixth Circuit Order) at 2 ("[T]he record reflects that Marsillett entered a valid guilty plea[.]").

Here, Marsillett acknowledged by executing the plea agreement that he had reviewed the full document with counsel and understood its terms. DE #536 (Plea Agreement) at 6, ¶ 13. At rearraignment, Movant confirmed to the Court, under oath, that he had read the plea agreement and sealed supplement and that he and his lawyer had discussed the documents' contents. DE #512 (Rearraignment Tr.) at 7-8. Defendant further affirmed that he understood the content of the plea agreement (including the sealed supplement). *Id.* at 8. He admitted entering into the plea voluntarily. *Id.* at 10-11. Additionally, the presiding Magistrate Judge personally addressed Movant and specifically discussed the collateral attack waiver. *Id.* at 18-19 ("[Paragraph 7] also tells me that you're giving up the right to attack collaterally the guilty plea, conviction, and

any order of restitution. What that generally means is that you're giving up the right to attack the guilty plea, conviction, and order of restitution by another lawsuit, another legal proceeding, a separate legal action. It's often called a habeas corpus matter or a motion to vacate or a Section 2255 case. . . . I understand that you are giving up your right to attack the guilty plea, conviction, and/or restitution by other legal action. Is that also correct?"). Marsillett, under oath, affirmatively responded that he understood the waiver, *id.* at 19, and that the inclusion of the wavier provision was voluntary, *id.* at 20.

Additionally, Marsillett confirmed to the Court that he understood the trial rights that he would forfeit by pleading guilty. *Id.* at 13-14. Finally, Marsillett expressed unreserved satisfaction with the advice, counsel, and representation of his lawyer, Hon. Garland L. Arnett, Jr. *Id.* at 7.

The record shows that Marsillett's responses were voluntary and verified, and the Court determined at the hearing that Marsillett was competent. *Id.* at 28. Solemn declarations in open court "carry a strong presumption of verity" and "constitute a formidable barrier" in subsequent collateral proceedings. *Blackledge v. Allison*, 97 S. Ct. 1621, 1629 (1977). Considering the representations that Defendant made in the plea agreement and during rearraignment, and the significance of his sworn statements, the Court can only conclude that Marsillett made an "informed and voluntary" waiver. *In re Acosta*, 480 F.3d at 422. The Sixth Circuit also found the plea, with the waiver included, to be valid. DE #588 (Sixth Circuit Order) at 2 ("[T]he district court properly determined that Marsillett knowingly and voluntarily entered his guilty plea.").

In sum, the Court finds the waiver of collateral attack rights to be effective. However, two of Marsillett's claims center on ineffective assistance; those conceptually

implicate the plea itself and are likely non-waivable. Further, Movant retained the right to challenge the sentence, and true jurisdiction is always subject to evaluation. The United States also did not rely on the waiver in its response to Marsillett's § 2255 motion. In the interest of justice,[7] the Court does not treat the waiver as dispositive and considers the merits of Marsillett's arguments.

### C. The Government's Alleged Breach of the Parties' Plea Agreement

Marsillett alleges that his plea agreement required the Government to (1) file a motion for downward departure and (2) recommend a sentence of 145 months in exchange for his substantial assistance and guilty plea. DE #611 (Motion), at 4; DE #536 (Plea Agreement); *see also* DE #537 (Sealed Supplement). Defendant argues that the prosecutor breached the plea agreement at sentencing "when the government introduced information that served no purpose but to influence the court to impose a harsher sentence." DE #611-1 (Memorandum), at 1 (citing DE #560 (Sealed Sentencing Tr.), at 16-17).

The United States unquestionably satisfied the two explicit requirements of the plea agreement and sealed supplement by: (1) filing a motion for downward departure and (2) recommending a sentence of 145 months. Marsillett acknowledges that "the government made its recommendation of 145 months," *id.* at 3, and the record shows that the United States filed a Motion for Downward Departure with the specified recommended sentence, DE #530 (Sealed Motion). Additionally, the United States reiterated its 145-month recommendation at the bench conference during sentencing. DE #560 (Sealed Sentencing Tr.), at 15-16. Moreover, the terms of the plea agreement and

---

[7] *Acosta* also places logical limits on enforcement. If a waiver or guilty plea results from ineffective assistance or is unknowing or involuntary, which is part of Marsillett's theory, *Acosta* would not enforce. *In re Acosta*, 480 F.3d at 422.

sealed supplement do not preclude the Government from making the responsive statements about which Marsillett complains. *See* DE ##536 (Plea Agreement), at 4, ¶ 5; 560 (Sealed Sentencing Tr.), at 16-17. At the end of the hearing statement Marsillett cites, the United States again explicitly reaffirmed its 145-month recommendation to the Court. DE #560 (Sealed Sentencing Tr.), at 17-18.

Furthermore, the Court rejects Marsillett's reliance on and comparison to *United States v. Whitney*, 673 F.3d 965 (9th Cir. 2012). In *Whitney*, the Ninth Circuit found the prosecutor breached the explicit terms of the plea agreement when she used proffer information improperly and argued for an increase in the Sentencing Guideline calculations. *Id.* at 971-72. The plea agreement in that case forbade proffer use at sentencing and "precluded either party from arguing in support of any departure from the Sentencing Guidelines." *Id.* at 969.

Here, the sentencing transcript shows that the prosecutor made a detailed, objective recitation of Marsillett's cooperative acts, even tendering the FBI 302 related to the targeted activities. DE #560 (Sealed Sentencing Tr.), at 6. The prosecutor related particular law enforcement benefits, in terms of federal investigations and prosecutions, that Defendant's assistance furthered. *Id.* at 9, 11. The Court actively questioned both counsel regarding the chronology, extent, and effects of assistance. Further, the prosecutor stood by his recommendation and described the conduct by Marsillett as "significant." *Id.* at 12. At the same time, the United States was candid—as it should have been—with the Court in response to questions from the judge about Marsillett's criminal record, further noting that the gravity of the record was a surprise to the prosecutor. *Id.* at 16-17. The prosecutor did not gratuitously comment on the record or seek to posture the

hearing against Marsillett. The Court thoughtfully assessed the full information provided. Marsillett's record may have reduced the prosecutor's ardor about the recommendation, but lack of enthusiasm is not a plea agreement breach. *See United States v. Baker*, 674 F.3d 1066, 1068 (8th Cir. 2012) ("The fact that the recommendation was made in other than the most enthusiastic terms does not breach the agreement."). The United States honored its commitments while maintaining credibility before and candor with the Court. All sides agreed and acknowledged that Judge Van Tatenhove would formulate the sentence. The United States agreed to a recommendation, and it fulfilled that promise, never once advocating for a period at odds with the recommended term. This is quite unlike the situation in *Whitney*.

Ultimately, at sentencing, although the Court granted the Motion for Downward Departure, it rejected the recommended sentence of 145 months, a matter that is in the Court's discretion. *See* 18 U.S.C. § 3553(a); U.S.S.G. § 5K1.1(a). Marsillett affirmatively recognized this possibility in his rearraignment colloquy:

> COURT: There is, as part of the sealed supplement, a recommendation -- or an agreement that the United States will recommend a particular sentence for you, but there is no guarantee that Judge -- the sentence that will be imposed will necessarily follow along with the government's recommendation. Do you understand, sir?
>
> MARSILLETT: Yes.

DE #512 (Rearraignment Tr.), at 12. Upon review, the Sixth Circuit upheld Marsillett's sentence as "both procedurally and substantively reasonable," and it held that the District

Court did not abuse its discretion in imposing the sentence. DE #588 (Sixth Circuit Order).

The Government did not promise that Judge Van Tatenhove would follow the recommendation. Indeed, the District Judge, though willing to reduce the applicable range significantly, viewed Marsillett's cooperation as fairly typical, and thus not deserving of extraordinary credit. There is no suggestion that the prosecutor mis-described the assistance given, and Marsillett cannot complain if the help he gave was inadequate to move the District Judge to the recommended 145 month term.

The sentencing decision of the District Court does not change the fact that the Government fulfilled its promises to Marsillett contained in the plea agreement and sealed supplement. As unambiguously indicated in the record, the Government complied with its bargained-for obligations. Marsillett's allegations to the contrary are meritless. The Government did not breach the plea agreement.

D. Ineffective Assistance of Trial Counsel

When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the

circumstances." *Id.* at 2064-65. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 2069. In the context of a guilty plea, a movant must show that a "reasonable probability exists that, but for counsel's errors, defendant would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 106 S. Ct. 366, 370 (1985).

Marsillett alleges that his counsel was ineffective at sentencing because counsel "failed to object to the government's breach of the parties['] plea agreement, and for his failure to investigate mitigating factors concerning defendant's substantial assistance." DE #611 (Motion), at 5. Movant argues that counsel was ineffective "for failure to investigate and for failure to submit testimony from the authorities in [the matter of Marsillett's assistance]." DE #611-1 (Memorandum), at 4.

Movant's first allegation is meritless because there was no breach of the plea agreement. *See* discussion *supra* Section III.C.

Movant's argument, as to sentencing mitigation, focuses on his lawyer's lack of preparation regarding assistance to state authorities. Marsillett claims that counsel should

have documented and been able to detail the state assistance discussed in the sealed portion of the sentencing hearing. While it is true that Arnett, the lawyer, did not provide third-party corroboration, DE #560 (Sealed Sentencing Tr.), at 13-14, he did give specifics of the cooperation. The United States did not dispute the credibility of the information and agreed the Court could consider it under § 3553(a); the Court indicated its intent to do so. *Id.*

Marsillett is critical of counsel, but he here offers no evidence or other specifics of what Arnett should have gathered and presented. He also does not independently tender any corroborative materials. The sentencing judge indicated an intent to assess state-related matters only relative to § 3553(a) factors, meaning that the cooperation details may not have mattered legally in the substantial assistance calculus, irrespective of form. Indeed, Judge Van Tatenhove queried whether he could, per § 3553(e) and § 5K1.1, assess cooperation in a state matter. Marsillett does not address that question here. Fundamentally, if § 3553(e) and § 5K1.1 do not apply to state-level cooperation, then counsel's readiness would not matter. The statutory and § 5K1.1 relief both hinge on assistance in the prosecution or investigation "of another person who has committed an offense." 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1. Clearly, a § 3553(e) motion rests only on cognizable cooperation, not other factors "under § 3553(a)." *United States v. Hawn*, 446 F. App'x 793, 796-97 (6th Cir. 2012) (citation omitted). Movant fails to address this foundational concern.[8]

---

[8] There is a circuit split on the question whether a defendant may receive substantial assistance credit for assisting state or local (non-federal) prosecutions. Most Courts of Appeals that have addressed the question have held or assumed that a defendant may receive the credit for assisting state or local prosecutions. *See United States v. Love*, 985 F.2d 732, 733, 735 (3d Cir. 1993); *United States v. Emery*, 34 F.3d 911, 913 (9th Cir. 1994) (following *Love*); *United States v. Busekros*, 264 F.3d 1158, 1159-60 (impliedly

The Court also notes that a prosecutor must seek the substantial assistance departure by motion. The Government's motion here addressed only the matters stated in the motion itself and in the prosecutor's proffer. That did not include the state matters about which Defendant complains. Thus, although the United States knew of the alleged assistive acts at issue, the prosecutor did not include that subject matter within the sphere of his motion. This further attenuates the importance of defense counsel's efforts to document Marsillett's state-level cooperation.

In any event, Marsillett does not persuasively contend that Garnett should have done more or that Judge Van Tatenhove would have reacted any differently to a corroborated (versus simply oral) proffer about the state matters. The sentencing judge specifically characterized Marsillett's depicted cooperation, state issues included, as "pretty typical" and expressly credited the "cooperative demeanor as it relates to the state charges that have been mentioned." DE #560 (Sealed Sentencing Tr.), at 23-24. Thus, Movant fails both as to the performance and prejudice elements of *Strickland*. He is not entitled to relief on this theory.

### E. Validity of Plea

Lastly, Marsillett alleges that his guilty plea was not knowingly and intelligently made due to the ineffective assistance of his trial counsel. DE #611-1 (Memorandum), at 6. Although Movant states he "is only attacking the voluntary and intelligent character of his guilty plea," he also makes further independent allegations of ineffective assistance of counsel, which the Court will consider. Indeed, in the eight pages devoted to this

---

recognizing District Court's ability to downward depart in those circumstances). The Second Circuit, however, held that § 5K1.1 only addresses assistance to federal authorities based on the use and meaning of "offense." *See United States v. Kaye*, 140 F.3d 86, 87-88 (2d Cir. 1998).

argument in his memorandum, Marsillett offers no further proof of the alleged invalidity of his guilty plea beyond his bare assertion that it was not knowingly and intelligently made and instead only makes new ineffective assistance arguments. Marsillett alleges he has found new items of evidence while incarcerated and that his counsel was ineffective for conducting no investigation toward finding the items earlier. He further alleges that he has found evidence that would implicate another person in the same crime of his conviction. In sum, Marsillett contends his lawyer inadequately investigated the case, failed to secure exculpatory proof, and misled him into pleading guilty.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 106 S. Ct. at 369 (quoting *North Carolina v. Alford*, 91 S. Ct. 160, 164 (1970)). Where "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* (quoting *McMann v. Richardson*, 90 S. Ct. 1441, 1449 (1970)). "[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.'" *Id.* (quoting *Tollett v. Henderson*, 93 S. Ct. 1602, 1608 (1973)).

During his rearraignment, Marsillett acknowledged the voluntary and knowing nature of his guilty plea, and the Court found his plea to be knowing and voluntary. DE #512 (Rearraignment Tr.), at 28. Movant endorsed the agreement's factual recitations and further provided in his own words a factual basis for the guilty plea. *Id.* at 25-27. He then

affirmatively pleaded guilty. *Id.* at 27. Sworn statements, like these, made in a plea colloquy carry a strong presumption of truthfulness, and Movant fails to overcome this presumption. *See Marks v. Davis*, 504 F. App'x 383, 386 (6th Cir. 2012); *Blackledge*, 97 S. Ct. 1621. Indeed, his statements "belie[] any hint of involuntariness." *Devlin v. United States*, 440 F.2d 671, 672 (6th Cir. 1971) (per curiam). Given Marsillett's sworn statements at rearraignment, and the lack of any allegations that would support his characterization of an unintelligent or involuntary plea, the Court must conclude that his counsel's advice "was within the range of competence demanded of attorneys in criminal cases," *McMann*, 90 S. Ct. at 1449, and that Marsillett's plea "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford*, 91 S. Ct. at 164.

Furthermore, the Sixth Circuit has already ruled that Marsillett's plea was knowing, voluntary, and intelligent. DE #588 (Sixth Circuit Order), at 2. The Court of Appeals found that the Magistrate Judge complied with the Rule 11 requirements and that "the district court properly determined that Marsillett knowingly and voluntarily entered his guilty plea." *Id.* Absent "highly exceptional circumstances, such as an intervening change in the law," a § 2255 motion "may not be employed to relitigate an issue that was raised and considered on direct appeal[.]" *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) (citing *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996)).

To skirt this rule, Marsillett seeks to impeach the foundation of his decision to plead by criticizing his lawyer's time investment, diligence in investigation, and candor in advice. Per Movant, if his lawyer had worked harder, run down more leads, and been

more honest with him, he would have forgone a plea and taken the case to trial. The Court thus turns to those issues.

Marsillett's further allegations of ineffective assistance of counsel center on perceived deficiencies in Arnett's investigation of certain witnesses, a possible defense, and certain items of potentially mitigating evidence. In his reply, Movant argues that his counsel was ineffective "for failing to investigate exculpatory evidence . . . and for providing [Movant] with false information about an investigation that [c]ounsel never even attempted to even investigate." DE #624 (Reply), at 2.

To succeed, Movant must satisfy the two-prong *Strickland* test, discussed *supra* Section III.D. To evaluate counsel's strategic decisions in failure-to-investigate claims, the focus is the reasonableness of the investigation. *English v. Romanowski*, 602 F.3d 714, 726 (6th Cir. 2010); *see also Wiggins v. Smith*, 123 S. Ct. 2527, 2538 (2003) (focusing on the reasonableness of the investigation). Marsillett's allegations are far afield from the egregious errors of trial counsel in cases accepting ineffective assistance claims. *See, e.g.*, *Towns v. Smith*, 395 F.3d 251 (6th Cir. 2005) (failure to investigate a known and potentially important witness who had admitted to the police that he had been involved in the crimes of which Towns was convicted and that Towns had played no part in the crimes); *Combs v. Coyle*, 205 F.3d 269 (6th Cir. 2000) (failure to investigate defense's own expert witness, who testified that, despite the defendant's intoxication at the time of the crime, the defendant nevertheless was capable of forming the requisite intent to commit the crimes); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987) (failure to investigate a known and potentially important alibi witness when counsel did not even make a reasoned professional judgment that investigation was not necessary).

The common elements of these successful ineffective assistance claims include either a failure of reasonable preparation by the lawyer, *see Combs*, 205 F.3d 269, or the existence of a *known* witness with a potentially important connection to the defendant or the facts of the case, *see Towns*, 395 F.3d 251; *Blackburn*, 828 F.2d 1177. Marsillett, on the other hand, alleges speculative facts, evidence, and witnesses divorced from the legal context of the plea.

Specifically, Marsillett first argues that the 2 hours and 24 minutes counsel spent with him is insufficient to prepare for trial. DE #611-1 (Memorandum), at 6-7. He next alleges he called a Winn-Dixie Pharmacy, where an employee allegedly advised him that "nothing in the files suggested any inquires [sic] from . . . counsel" concerning prescriptions. *Id.* at 10. Then, he alleges that the Osceola County Clerk's Office provided him with two warrants filed against Isaiah Simpson. *Id.* Further, he alleges that Joyce Adams Caudill continued—even post arrest—to sponsor Cheryl Lackey in drug trafficking through use of the Green Dot network. *Id.* at 10-11. He makes additional allegations concerning Caudill, questioning her source of income and the legitimacy of doctors she and other co-defendants saw. *Id.* at 11-13.

The Court, in a § 2255 habeas proceeding alleging ineffective assistance of counsel, does not conduct a new trial or reconsider the full course of prior litigation. Instead, the Court's inquiry is relatively limited: Were counsel's investigation and preparation reasonable? *See English*, 602 F.3d at 726. Counsel is permitted to make strategic choices during trial preparation, provided that "reasonable professional judgments support the limitations on investigation." *Id.* (quoting *Strickland*, 104 S. Ct. at 2066). The record in this case, particularly the transcripts of the court proceedings, shows

that Movant's counsel was reasonably prepared and had conducted a reasonable investigation into the case. The time counsel spent with Movant was contextually reasonable and sufficient and certainly does not reflect preparation time outside the jail. The inconclusive and speculative nature of the Winn-Dixie employee's statement does not show an unreasonable investigation. The further allegations regarding Simpson and Caudill likewise do not impugn counsel's investigation into Marsillett's case and defenses.

The record indicates that the evidence and investigatory complaints Marsillett now levels would have been of little rational significance to his lawyer. Thus, Marsillett made a statement in the case to the FBI, even pre-arrest, that fully described his role in the organization. *See* DE #560 (Sealed Sentencing Tr.), at 6-7 (Court describing statement: he "admitted to the scheme, which is that he was recruiting a fairly large number of individuals to make these trips . . . and was funding their trips and was receiving his proceeds[.]"); *id.* at 7 (stating that he "in essence, admitted his role, which was as this organizer and the person who was managing this entire operation"). The facts stated in the plea agreement reflect that Marsillett, over a significant period of time, organized and sponsored pill acquisition trips to Florida. He admitted under oath to Judge Atkins that he "took people to Florida to the doctor, and . . . paid for the visits, and they gave me half their pills in exchange for the money that I put up." DE #512 (Rearraignment Tr.), at 25. He also conceded, in pleading to the forfeiture count, that the operation grossed him a forfeitable amount of $250,000 in proceeds.

Given this background, the value of the items Movant raises is doubtful. Were the Florida participants contemporaneously engaged in other illegal acts? The Court assumes

so. The plea agreement depicts a group of operatives well-schooled in the pill acquisition game. Indeed, Marsillett began as simply a traveler and evolved into a leader once Florida became the destination state. The plea agreement expressly acknowledges that trips occurred during the period that did not involve Marsillett's sponsorship. DE #536 (Plea Agreement), at 3 ("There were occasions when the Defendant did not sponsor the above referenced individual's [sic] travel to Florida."). Pinning specific or distinct activities on other participants would hardly have exonerated Marsillett for his own role, which is the conduct to which he pled guilty. Further, to the extent Movant hopes to depict Caudill as the true ring-leader, the Court would simply say that the CCE statute is fully capable of applying to multiple persons in various tiers of enterprise leadership— heaping blame on Caudill would not spare Marsillett from CCE accountability. *See* 21 U.S.C. § 848(c) (applying definition in part to actions with respect to person who "occupies a position of organizer, a supervisory position, or any other position of management"). The language, in addition to organizational realities, plainly signifies that there would not necessarily be simply one person chargeable with the level of authority envisioned in the CCE statute. *See also id.* § 848(b)(1) (applying aggravated penalty to "the principal administrator, organizer, or leader . . . or . . . one of several such principal administrators, organizers, or leaders").

Marsillett, as if often the case, in hindsight blames his lawyer for not turning enough stones or chasing enough leads. He does not convince the Court that Arnett acted unreasonably in investigating the case or advising Defendant to plead. Further, additional investigation would have yielded no palpable benefit to the factual and legal

circumstances Marsillett faced. The Court rejects the effort to impeach the plea via the rubric of *Strickland* and *Lockhart*.

## III.    MOTION TO APPOINT COUNSEL

The appointment of counsel in § 2255 proceedings is firmly a matter in the Court's discretion. "In all proceedings brought under [§ 2255], and any subsequent proceedings on review, the court may appoint counsel." 28 U.S.C. § 2255(g). Further, when "the court determines that the interests of justice so require, representation may be provided for any financially eligible person who is seeking relief under section . . . 2255." 18 U.S.C. § 3006A(a)(2)(B).

Marsillett seeks appointment of counsel to investigate his ineffective assistance of counsel claims. He asserts that information he needs to establish the allegations is privileged and that he needs counsel to assist his efforts at relief. DE #625 (Motion for Appointment of Counsel). Marsillett appears to be requesting to send counsel to sea without a rudder, for he provides no further details of what evidence he may be seeking to prove. He further provides no facts to support his assertions of the existence of privileged information, which is a matter Marsillett would himself control. To the extent Marsillett refers to the alleged evidence he has discovered through his own investigation while incarcerated, even assuming it does exist, the record indicates that trial counsel nevertheless performed a reasonable investigation. Thus, Marsillett's ineffective assistance claim, as discussed above, is unfounded in law and fact. Pursuant to the Court's recommendation that Marsillett's motion for § 2255 relief be denied altogether, the Court also declines to appoint counsel in these circumstances. The case, which is facially developed and analytically clear, does not merit such an appointment.

## IV.    CERTIFICATE OF APPEALABILITY[9]

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604.

Movant has not made a "substantial showing" as to any claimed denial of rights; his plea agreement breach, *Strickland*, and other claims conclusively fail. The Court believes that reasonable jurists would not find its determination on the merits debatable.

---

[9] 28 U.S.C. § 2255(b) requires the Court to hold an evidentiary hearing unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Further, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). Here, none of Marsillett's claims warrants a hearing. As the records of the case conclusively show, for the reasons stated fully above, Marsillett is not entitled to relief.

Accordingly, the Court recommends that the District Court entirely deny a Certificate of Appealability.

## V.	RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Judge wholly **DENY** § 2255 relief (DE #611) and grant **NO** Certificate of Appealability. The Court further **DENIES** the Motion to Appoint Counsel (DE #625).

*   *   *   *   *

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition,[10] issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466, 475 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 14th day of July, 2014.



Signed By:

*Robert E. Wier*

United States Magistrate Judge

---

[10] Because the appointment decision in non-dispositive, per 28 U.S.C. § 636(b)(1)(A), any party objecting to this Order should consult the statute and Fed. R. Civ. P. 72(a) concerning its right of and the mechanics for reconsideration before the District Court. Failure to object waives a party's right to review.